**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JEREMY DUANE CROFFORD,

      Petitioner - Appellant,

v.

JAMES RUDEK, Warden,

      Respondent - Appellee.

No. 10-6187
(W.D. Okla.)
(D.C. No. 5:10-CV-00279-F)

---

**ORDER DENYING CERTIFICATE OF APPEALABILITY
AND DISMISSING APPEAL**

---

Before **O'BRIEN**, **McKAY**, and **TYMKOVICH**, Circuit Judges.

Jeremy Crofford, an Oklahoma state prisoner, seeks a certificate of appealability

(COA)[1] to appeal from the dismissal of his 28 U.S.C. § 2254 habeas petition. He claimed

his guilty plea was not voluntary because his attorneys misled him and the state trial

judge prodded him into admitting to the elements of First Degree Murder. Because the

record belies his claims, the District Court denied habeas relief. Crofford is not entitled

to a COA as he has not "made a substantial showing of the denial of a constitutional

right." 28 U.S.C. § 2253(c)(2).

---

[1] We treat Crofford's notice of appeal as a request for a COA. *See* Fed. R. App. P.
22(b)(2).

# I.  BACKGROUND

On November 29, 2007, Crofford, his significant other and their friends engaged

in a protracted verbal exchange with another group of individuals.  Over time and fueled

by alcohol, the verbal exchange escalated into threats and invitations to fight from both

sides.  The tragic climax came when Crofford rode his motorcycle to the home of one of

his antagonists, pulled his gun and fired multiple shots at three men gathered in the front

yard.  One of them, Ricky Smith, died from a gunshot wound.  Crofford was charged in

Oklahoma state court with one count of First Degree Murder and two counts of Shooting

with the Intent to Kill.[2]  Following an April 18, 2008 preliminary hearing, Crofford's two

attorneys began to prepare his case for trial.[3]  They met with him and, among other

things, reviewed the charges, evidence, potential defenses and their trial strategy

(including their trial outline).  On more than one occasion possible defenses were

discussed, including specific discussions of defenses to the charge of First Degree

Murder.[4]  Crofford and his legal team also analyzed the "pros and cons" of a guilty plea.

---

[2]  Under Oklahoma law, a person commits First Degree Murder when he "unlawfully and with malice aforethought causes the death of another human being," which carries a maximum sentence of life imprisonment without the possibility of parole. Okla. Stat. tit. 21, §§ 701.7, 701.9 (2009).  On the other hand, Shooting with the Intent to Kill is defined as "[e]very person who intentionally and wrongfully shoots another with or discharges any kind of firearm, with intent to kill any person . . . [which is] punishable by imprisonment . . . not exceeding life."  Okla. Stat. tit. 21, § 652(A) (2009).

[3]  The factual account of trial preparation and plea negotiation comes from a hearing conducted by the trial judge on Crofford's request to withdraw his guilty plea.

[4] Crofford was attracted to a self-defense theory.  He told his trial attorneys he had no intention to use his gun when he went to confront his adversaries; he only drew it when the three guys in the yard came toward him in a menacing manner.  The attorneys explained self-defense would be a difficult row to hoe as the physical evidence did not

(R. at 288-289)

On January 12, 2009, the day his trial was to begin, Crofford indicated an interest in possibly pleading guilty. According to Crofford's attorneys they were ready for trial, but nonetheless adhered to his wish. As the potential jurors waited, they spent several hours negotiating with the state to amend the charges,[5] discussing the pros and cons of a "blind plea"[6] with Crofford, and working on a "summary of facts, plea of guilty form."[7] (*Id.* at 285-287, 290, 311, 317-319.) According to the testimony of one of his attorneys, they advised Crofford of the potential punishment for all charges. Naturally these discussions focused on the first degree murder charge as it carried a mandatory life sentence. The attorneys specifically explained the range of sentence for First Degree Murder was limited to life, either with or without the possibility of parole (in the discretion of the sentencing judge). They also informed Crofford that First Degree

---

support it; nevertheless they would do what they could.

[5] Ultimately, the state agreed to amend counts II and III from Shooting with Intent to Kill, to Use of Vehicle to Facilitate Discharge of Weapon in Conscious Disregard of Safety of Others and Assault with a Dangerous Weapon, respectively. *See* Okla. Stat. tit. 21, §§ 652, 645 (2009).

[6] Crofford refers to his ultimate plea as a blind plea, even though the charges were negotiated. It is a blind plea only in the sense that it contained no sentencing guarantees or recommendations.

[7] In Oklahoma every guilty plea must be accompanied by a form detailing the particulars. *See* Rule 4.1 of the Rules of the Oklahoma Court of Criminal Appeals. The mandatory form includes, among other things: statement of facts summarizing what the defendant did; questions regarding the defendant's understanding of the range of punishments for the crimes pleaded guilty to; and questions regarding whether the defendant entered the guilty on his own free will without coercion and compulsion. *See* "Uniform Plea of Guilty – Summary of Facts," Oklahoma Court of Criminal Appeals Form 13.10, a*vailable at* http://www.okcca.net/online/rules/rulesrvr.jsp.

Murder was an "85 percent crime," meaning he would have to serve at least 38 years of a life sentence (assuming he was afforded the possibility of parole). (*Id.* at 292-293.) Also discussed was the "possibility for a life sentence to be split by the Court."[8] (*Id.* at 293.) However, his attorneys emphasized "there was a potential for [a split sentence] but not the probability of it." (*Id.* at 312.) His attorneys made clear that entering into a "blind plea" provided "no guarantees" about the sentence the court might impose. (*Id.* at 293.) Ultimately, Crofford's attorneys told him that "you need to make this decision [whether to plead guilty] based on the idea that you're only going to at best get life with other concurrent sentences. You cannot make this decision based on the idea you're going to be having some form of suspended sentence, even though it may be technically possible under the law." (*Id.* at 293-294.) Crofford and his attorneys then completed the "summary of facts, plea of guilty form" detailing the specifics.[9] (*Id.* at 290.)

Later that day, the trial court held a hearing on Crofford's change of plea, during which a lengthy colloquy ensued. The court asked Crofford if he understood "the nature and purpose and consequences of [the] proceeding"[10] and explained the amended charges. (R. at 97-98) Specifically, it made sure he knew he was pleading guilty to "one

---

[8] Apparently his attorneys floated this theory because the language in the First Degree Murder statute kept "the door open" for such a potential outcome. (R. at 293.) If successful, after part of the incarceration for First Degree Murder was served, the remainder would be suspended and Crofford released to probation.

[9] Crofford and his attorneys reviewed all 35 questions in the form. The questions were then answered, with certain portions prepared by Crofford and others by his attorneys. After reviewing the completed form, Crofford signed it.

[10] Crofford answered "yes, sir."

count of murder in the first degree, one count of use of a vehicle to facilitate the discharge, the drive-by, and then assault with a dangerous weapon." (*Id.* at 97.) Crofford said he understood when the court told him that it could "sentence [him] to incarceration [for] life, life without parole" for Count I, two years to life for Count II, and zero to ten years for Count III (*Id.* at 101.) The court also made clear to him that First Degree Murder was an "85 percent" crime, requiring him to "serve a flat 85 percent . . . which basically means, the minimum sentence that [Crofford] could serve, absolute minimum, [was] over 38 years in prison." (*Id.* at 98.)[11] Crofford said he understood. He also expressed full satisfaction with his attorneys' representation and confirmed that they had been effective. (*Id.* at 101.)

Some confusion occurred, however, when the judge asked Crofford about the particulars of his acts. He freely admitted to firing the shots, but claimed he "had no

---

[11] The Court then reaffirmed the seriousness of the potential punishment for First Degree Murder:

COURT:   All right. Do you understand that the only possible punishments for Count 1 without a Bill of Particulars is life imprisonment or life imprisonment without the possibility of parole?

CROFFORD: Yes, sir.

COURT:   There isn't anything [] else that I could even do with this. Do you understand? Do you understand that? The minimum is life. Do you understand that, sir?

\*\*\*

CROFFORD: Yes, Sir

(R. at 98-99.)

intention on [sic] killing anybody that night." (R. at 102.) This prompted one of Crofford's attorneys to speak with him off the record to clarify any misunderstandings. After Crofford's consultation with counsel, the trial court told him it needed to know the "truth" as to his intent that night. (*Id*. at 104.) Crofford's possible confusion was clarified by his next statements:

> COURT: If you're guilty of murder, that's fine. If you're not guilty of murder and if you didn't intend to kill him, that's a different situation and the jury may decide if that's true. Fair enough? You understand what I'm saying to you? This is important stuff. Do you understand?
>
> CROFFORD: Yes, sir.
>
> COURT: All right. So what's the truth? Under oath what's the truth about what was in your head when you pulled that trigger?
>
> CROFFORD: I was trying to kill Ricky Smith.

(*Id.* at 104-105.) The judge addressed Crofford with respect to the "written summary of facts, plea of guilty form," and found that he understood "the nature, purpose and consequences of [the] proceeding," and his "pleas of guilty [were] knowingly and voluntarily entered . . . ." (*Id.* at 106.)

On February 20, 2009, Crofford was sentenced to life imprisonment <u>with</u> the possibility of parole on First Degree Murder (Count I), 35 years imprisonment for Use of Vehicle to Facilitate Discharge of a Weapon (Count II), and 10 years imprisonment for Assault with a Dangerous Weapon (Count III).[12] Approximately two weeks later, it

---

[12] The sentences for Counts I and II were ordered to run concurrently with each other but consecutive to Count III. Like the original charges which carried the possibility of three consecutive life sentences, his amended charges could have run "concurrent or

appears, Crofford sent two letters to the judge requesting to withdraw his plea.[13] The judge set a hearing on his request and appointed new counsel from the Oklahoma County Public Defender's Office. Both of his original trial attorneys withdrew from representation the same day.

At the hearing, Crofford made several allegations concerning his two former attorneys. Among them, he testified, "all I could do was what [counsel] told me to do." (R. at 210.) He stated his counsel told him "you need to just say this one thing to get past this part. You know what the game is and you just need to go along with it or whatever, you know." (*Id.* at 207.) In rebuttal, the State called one of Crofford's former attorneys who refuted Crofford's accusations.[14] In particular, the attorney denied Crofford was told he had to enter a blind plea or was promised a certain sentence if he did.[15] After hearing the testimony, the court denied Crofford's request to withdraw his guilty plea. Among other things, the judge found Crofford's argument regarding a split sentence "was simply

consecutive." (R. at 101.)

[13] Crofford asserts the letters were filed with the trial court on March 2 and 5, 2009, respectively. Although the record does not support this fact, we accept his unchallenged assertion.

[14] The State also called the deputy sheriff present during the January 12, 2009 discussions between Crofford and his original counsel. The deputy's testimony corroborated counsel's version of the discussions. He testified: Crofford's "lawyers . . . [were] laying out all his options" and did not appear to be coercing or pressuring Crofford in any way. (R. at 265.)

[15] Specifically, counsel testified that he "advised Mr. Crofford specifically as to Count 1 of murder in the first degree was the range of punishment is life and life without parole because the State was not seeking the death penalty. . . ." (R. at 292.)

not the evidence."[16] (*Id.* at 336.) The judge specifically noted trial counsel's testimony that Crofford was told it was "possible [for a split sentence] but not probable." (*Id.*) In emphatic terms the judge recalled having "told [Crofford] in [the] plea [hearing] that . . . the minimum [was] 38 years, 38 years in prison on the record in the transcript." (*Id.*) Finally, the judge again emphasized to Crofford that he was given the "minimum sentence" and based upon the evidence his "pleas of guilty were freely and voluntarily entered." (R. at 339.)[17]

Crofford then filed a Petition for Writ of Certiorari[18] with the Oklahoma Court of Criminal Appeals (OCCA), claiming: (1) his guilty plea was not knowing and voluntary; (2) the trial court erred in accepting his guilty plea to the first degree murder charge and not allowing him to subsequently withdraw it because there was an inadequate factual basis to support the charge; (3) he was denied effective assistance of counsel; and (4) the

---

[16] It appears Crofford has a selective memory; perhaps understandably given the difficult choice he faced. But even if his version of the conversations were accepted it would profit him little. Given the trial judge's clear explanation of the narrow range of sentencing possibilities he cannot credibly claim prejudice.

[17] Similar to Rule 11(d) of the Federal Rules of Criminal Procedure, in Oklahoma "[t]he court may, at any time before judgment, upon a plea of guilty, permit it to be withdrawn, and a plea of not guilty substituted." Okla. Stat. Ann. tit. 22 § 517 (West 2010). Crofford attempted to withdraw his plea after he was sentenced, and had the burden to show "it was apparent from the record" that his plea of guilty was entered "unadvisedly, through ignorance, inadvertence, influence, or without deliberation, and that there is a defense that should be presented to the jury." *See Powell v. State*, 229 P.2d 230, 233 (Okla. Crim. App. 1951); s*ee also Elmore v. State*, 624 P.2d 78, 80 (Okla. Crim. App. 1981) (same).

[18] Through Writs of Certiorari the OCCA permits a form of interlocutory review of motions to withdraw guilty pleas. *See* Rules 4.1-4.4 of the Rules of the Oklahoma Court of Criminal Appeals.

cumulative effect of all errors deprived him of due process. The OCCA denied certiorari review, stating:

> [Crofford] completed a written Summary of Facts on Plea of Guilty prior to entering his pleas. The trial court held a thorough plea colloquy with [Crofford], ensuring that he was competent, satisfied with counsel's assistance, and willing to forgo a jury trial and admit the facts necessary to support the State's charges. A few weeks later, the court entertained considerable evidence from the defense in mitigation of sentence. Finally, when [Crofford] expressed second thoughts about his pleas, the court appointed new counsel for him and held another hearing, receiving testimony from [Crofford] and his original counsel. Contrary to [Crofford's] claims, the extensive record supports the trial court's conclusion that [he] (1) voluntarily waived all rights associated with a jury trial, and knowingly and intelligently admitted a factual basis for the pleas; (2) was clearly informed of the sentences he could receive; (3) was not misled about the nature of the sentencing hearing; and (4) understood that his plea could not be withdrawn at whim.

(*Id.* at 345-346.) It concluded "[t]he requirements of *King v. State*[19] . . . were sufficiently followed, and the trial court did not abuse its discretion in denying [Crofford's] motion to withdraw his plea." (*Id.* at 346.)

Crofford filed a pro se § 2254 habeas corpus petition in federal court setting forth four claims: (1 & 2) his blind guilty plea was not knowing and voluntary; (3) there was an insufficient factual basis for acceptance of his guilty plea; and (4) the OCCA erred in denying certiorari review.[20] In a thorough and well-reasoned report, the magistrate judge

---

[19] *King v. State*, 553 P.2d 529, 532 (Okla. Crim. App. 1976) ("We have, in the past, repeatedly emphasized the serious remifications [sic] of an accused's plea of guilty and the necessity of an adequate record reflecting compliance with procedures articulated by this Court to insure an accused's plea of guilty is voluntarily and intelligently entered as mandated by the United States Supreme Court in *Boykin v. Alabama*, . . .").

[20] Although Crofford filed his petition pro se, yet another new attorney (his fourth by our calculation) entered his appearance and filed a brief in support of Crofford's

recommended denial of Crofford's request for habeas relief, concluding the "state courts acted reasonably when they applied the *Boykin*[21] test and found from the evidence that the guilty plea was knowing and voluntary." (*Id.* at 14.)

Crofford objected to the magistrate judge's report and recommendation (R & R). The district judge overruled his objections, adopted the R & R and denied Crofford's § 2254 motion. The court subsequently denied his application for a certificate of appealability.

## II. DISCUSSION

A certificate of appealability is a jurisdictional prerequisite to our review of a petition for a writ of habeas corpus. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). To be entitled to a certificate of appealability, Crofford must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make the requisite showing, he must demonstrate "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (quotations omitted).

In his opening brief, Crofford repeats his claim that his plea of guilty did not meet the constitutional due process standards of voluntariness. He contends his admission to intending to kill the victim was only "after considerable prodding by the state district

---

original § 2254 petition.

[21] *Boykin v. Alabama*, 395 U.S. 238, 244 (1969) (holding defendant must have "a full understanding of what the plea connotes and its consequences").

- 10 -

court and [his] attorneys . . . ." (Opening Br. at 15).

As we have explained on numerous occasions, "[t]o enter a plea that is knowing and voluntary, the defendant must have 'a full understanding of what the plea connotes and of its consequence.'" *See, e.g., United States v. Hurlich*, 293 F.3d 1223, 1230 (10th Cir. 2002) (quoting *Boykin*, 395 U.S. at 244). Crofford's complaints about his trial attorneys are a thinly disguised claim of ineffectiveness of counsel. That appears to be a strategic choice intended to avoid the required proofs – substandard attorney performance and resulting prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Ineffective assistance of counsel could be shown by faulty advice about the process or the consequences, but that is only half of the battle. Assuming, contrary to the evidence, that such was the case here Crofford's showing of prejudice is lacking because the trial judge adequately explained those matters and Crofford acknowledged his understanding.

Perhaps recognizing that he might be called to task on the issue of prejudice he attempts to impugn the plea colloquy with the judge. In his objections to the magistrate's R & R, Crofford characterized the court's colloquy with him as "brutal . . . judicial cross-examination." (R. at 33.) Crofford continues, tone and tint, his attack on appeal and contends he "stated that he was trying to kill the victim . . . after considerable browbeating by the State District Judge and his attorneys." (Opening Br. at 16.) The record does not support his hyperbole. The questions and explanations by the trial court were proper and reflective of the procedures articulated by the OCCA in *King v. State* as well as those contained in Rule 11 of the Federal Rules of Criminal Procedure. The questions were not coercive. Rather, the trial judge seems to have made every effort to

insure Crofford's plea of guilty was voluntarily and intelligently entered with full knowledge of the possible consequences, as required by *Boykin*.[22]

Both the OCCA and the district court correctly applied the controlling standard and concluded Crofford's plea complied with the constitutional standards of voluntariness. In response to the confusion at Crofford's plea hearing regarding his intent to kill the victim, the trial court made sure to explain to Crofford that "[i]f you're guilty

----

[22] In addition, Crofford contends the first degree murder count cannot stand because "[t]he constitutional problem is that both the state district court and the Federal Magistrate Judge . . . found that there was transferred intent." (Opening Br. at 15.) However, he did not raise this argument in his objections to the magistrate's R & R. *See United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1059-1060 (10th Cir. 1996) ("[P]recluding appellate review of any issue not contained in objections, prevents a litigant from 'sandbagging' the district judge by failing to object and then appealing.") (citation omitted); *see also Laurson v. Leyba*, 507 F.3d 1230, 1232 (10th Cir. 2007). Even if we were to consider his newly minted argument, Crofford fails to identify where in the record the courts "made findings that the case was one of 'transferred intent.'" (Opening Br. at 10.) Our review of the record reveals transferred intent was only briefly mentioned twice. At the plea hearing, the trial court stated:

> Well now, what's the truth? Is this – are you trying to scare somebody or are you doing something recklessly, is it – you know, there is a whole lot of different things that can enter into this and you're not guilty of murder unless you decide and you made the conscience [sic] decision to kill this man and you went there and shot him and it looks like you wounded somebody who happened to be in the area. That's called transferred intent.

(R. at 104.) At the hearing on Crofford's request to withdraw his plea, the court told him:

> The other side of that is, in the sentencing, you came out alright on the sentencing. You got the minimum in this case. I gave you life. You have a possibility of getting out and I took, what the drive-by, which I think may have merged and ran it concurrent. And I ran the 10 years, the shooting of the other guy who was just in the wrong place at the wrong time, it's called transferred intent, we gave you the 10 years on that.

(*Id.* at 338-339.) We do not accept Crofford's mischaracterization of the record.

of murder that's fine.  If you're not guilty of murder and if you didn't intend to kill him, that's a different situation and the jury may decide if that's true." (R. at 104-05.)  Then, when asked to tell the truth as to his intent when he "pulled the trigger," Crofford unequivocally answered "I was trying to kill Ricky Smith." (*Id.* at 105.)  He was well aware of his choice to stand on his earlier not guilty plea and go to trial before the waiting jury.  His in-court admission of intending to kill Ricky Smith together with the other evidence is an adequate basis to conclude he was guilty of First Degree Murder.

Crofford's guilty plea was knowing and voluntarily entered.  Because jurists of reason could not debate the correctness of the district court's decision, Crofford's request for a COA is **DENIED** and this matter is **DISMISSED**.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge